UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION–FLINT

IN RE:

TERESA C. BOUNDS,                          Case No. 16-30360
                                                             Chapter 13 Proceeding
                      Debtor.                   Hon. Daniel S. Opperman
_____/

## OPINION REGARDING BRITE FINANCIAL SERVICES INC.'S OBJECTION TO CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN

### Facts

Debtor, Teresa C. Bounds, procured a 2013 Chevrolet Malibu ("Vehicle"), by entering into a "Closed End Vehicle Lease Agreement"on November 3, 2015 ("Lease Agreement"), with Brite Financial Services, Inc., as servicer for LHPH, which was the assignee of Carite of Flint ("Brite Financial"). In her proposed Chapter 13 plan, Debtor treats Brite Financial's claim as a Class 5.2 secured claim. Brite Financial objects to Debtor's proposed plan, asserting that its claim should be treated as a Class 6 executory contract, with an ongoing monthly payment of $563.59. Brite Financial also objects to confirmation asserting that it fails to treat its arrearage of $643.12, it does not provide for equal monthly payments to it pursuant to 11 U.S.C. § 1325(a)(5)(B)(iii), it does not provide for termination of the stay upon lease expiration on November 15, 2019, as well as being underfunded.

Debtor responds that pursuant to applicable statutory and case law, as well as the IRS standards, the Lease Agreement is more properly treated as a security agreement, and her Chapter 13 plan as proposed should be confirmed on this issue. Specifically, Debtor argues that the facts of this case are that the subject vehicle is not likely to have a useful life beyond the 4-

1

year agreement for payments, and at the end of the term, a nominal buy out is offered.

The parties agree that the preliminary fundamental issue before the Court is whether the lease between Debtor and Brite financial is actually a security agreement, and properly treated as a secured claim in Debtor's proposed Chapter 13 Plan.

The relevant terms of the Lease Agreement are as follows:

| Lease Term | 4 years of 208 weekly payments (¶ 2(b)) |
|---|---|
| Amount Due at Signing | $1,500.00 (¶ 2(a)) |
| Weekly Lease Payment | $130.06 (¶ 2(b)) |
| Disposition Fee (if Vehicle not purchased and there is no casualty loss) | $450.00 (¶ 2(c)) |
| Total Payments To Be Made under the Lease Term | $28,002.46 (¶2(d)) |
| Purchase Option at the End of the Lease Term | Yes, calculated by payment of the Lease Balance described in Paragraph 5 and, by reference Paragraph 2(g)(iv) of the Lease of $8,243.40, plus $375.00, plus applicable official fees and taxes. |
| Ability To Terminate | Yes, only after payment of a "substantial amount," which depends upon when lease is terminated. Otherwise, lease terminates at expiration of lease term. (¶ 2(h) and ¶ 13) |
| Right To Extend Lease | No (¶ 13) |

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 157(a) and E.D. Mich. LR 83.50. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L) (confirmations of plans).

## Law--Lease versus Security Agreement

Debtor contends that the "lease" was in fact an installment contract and security agreement. The Debtor has the burden of proof as it is the party seeking to characterize the lease as an instrument other than a lease. *In re QDS Components, Inc.*, 292 B.R. 313, 321-22 (Bankr. S.D. Ohio 2002).

Generally, a lease is defined as a grant of a right to use property for a period shorter than the economic life of the property, with the obligation to return the property at the end of the term. *Id*. at 322.

> A lease involves payment for the temporary possession, use and enjoyment of goods, with the expectation that the goods will be returned to the owner with some expected residual interest of value remaining at the end of the lease term. In contrast, a sale involves an unconditional transfer of absolute title to the goods, while a security interest is only an inchoate interest contingent on default and limited to the remaining secured debt.

*Id*. (citing James J. White & Robert S. Summers, Uniform Commercial Code vol. 4, § 30-3, 14 n.18 (5th ed. 2002)). While this seems to be a simple concept, in practice courts have had difficulty distinguishing between leases and security agreements and conflicting case law has resulted. Some of this difficulty arose from a pre-1987 version of the Uniform Commerical Code's ("UCC") definition of "security interest" which focused on the intent of the parties.[1]

As a result, the UCC was amended in 1987 to focus on the economic realities of the transaction. *QDS*, 292 B.R. at 331. While UCC 1-201(37) requires the court to examine the facts of each case to determine whether a security interest exists, the UCC also sets forth a two

---

[1] In applying the old version of the UCC, courts developed a long list of factors, including, for example, whether the purported lessee paid for insurance and maintenance and whether the lessee assumed the risk of loss. The numerous factors were unworkable. *Addison v. Burnett*, 49 Cal. Rptr. 2d 132, 135 (Cal. Ct. App. 1996); *Carlson v. Giacchetti*, 616 N.E.2d 810, 812 (Mass. Ct. App. 1993).

part test, sometimes called the "bright line test," to determine if the transaction is a security agreement as a matter of law.  The transaction is a security transaction per se if: 1) the lessee does not have the right to cancel the purported lease before the end of the term and 2) the lease term is for the full economic life of the goods or if the purported lessee can obtain title to the goods for nominal additional consideration.  If the court determines that the bright line test has not been satisfied, the court must examine all the facts to determine whether the transaction is a lease or a security agreement.  The court must focus on the economic effect of the transaction, not the intent of the parties.  "If there is a meaningful reversionary interest – either an up-side right or a down-side risk – the parties have signed a lease, not a security agreement.  If there is no reversionary interest, the parties have signed a security agreement, not a lease." *QDS*, 292 B.R. at 332-33.

"The existence, nature, and extent of a security interest in property is governed by state law." *Butner v. U.S.*, 440 U.S. 48, 55 (1979).  Here, Paragraph 19(f) of the Lease Agreement contains a choice of law clause, stating that the lease is "interpreted according to the laws of the state where [the lessor is] located."  There is no dispute that the Debtor, as lessor, was located in Michigan at the time the Lease Agreement was signed.  Thus, such is interpreted by Michigan law, at the election of the lessor.

Michigan also has adopted the new version of UCC section 1-201(37), as codified in M.C.L.A. § 440.1203, which states:

> (1) Whether a transaction in the form of a lease creates a lease or security interest is determined by the facts of each case.
>
> (2) A transaction in the form of a lease creates a security interest if the consideration that the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease and is not subject to

4

termination by the lessee, and any of the following are met:

(a) The original term of the lease is equal to or greater than the remaining economic life of the goods.

(b) The lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods.

(c) The lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement.

(d) The lessee has an option to become the owner of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement.

(3) A transaction in the form of a lease does not create a security interest merely because any of the following are met:

(a) The present value of the consideration the lessee is obligated to pay the lessor for the right to possession and use of the goods is substantially equal to or is greater than the fair market value of the goods at the time the lease is entered into.

(b) The lessee assumes risk of loss of the goods.

(c) The lessee agrees to pay, with respect to the goods, taxes, insurance, filing, recording, or registration fees, or service or maintenance costs.

(d) The lessee has an option to renew the lease or to become the owner of the goods.

(e) The lessee has an option to renew the lease for a fixed rent that is equal to or greater than the reasonably predictable fair market rent for the use of the goods for the term of the renewal at the time the option is to be performed.

(f) The lessee has an option to become the owner of the goods for a fixed price that is equal to or greater than the reasonably predictable fair market value of the goods at the time the option is to be performed.

(4) Additional consideration is nominal if it is less than the lessee's reasonably predictable cost of performing under the lease agreement if the option is not exercised. Additional consideration is not nominal if either of the following are met:

> (a) When the option to renew the lease is granted to the lessee, the rent is stated to be the fair market rent for the use of the goods for the term of the renewal determined at the time the option is to be performed.

> (b) When the option to become the owner of the goods is granted to the lessee, the price is stated to be the fair market value of the goods determined at the time the option is to be performed.
>
> (5) The "remaining economic life of the goods" and "reasonably predictable" fair market rent, fair market value, or cost of performing under the lease agreement must be determined with reference to the facts and circumstances at the time the transaction is entered into.

Analysis

In this case, the lease is not a security agreement per se under the UCC two part bright line test. Although Debtor can terminate the lease prior to the end of the term, such termination is subject to a substantial penalty of unpaid remaining lease payments and other fees under Paragraph 2(h) of the Lease Agreement. While Debtor has the option to purchase the Vehicle, the option to purchase is not for nominal consideration. Paragraph 2(j) of the Lease Agreement provides that the lessee has the option to purchase the Vehicle at the expiration of the lease term for its residual value of $8,243.40, plus $375 in addition to "applicable official fees and taxes." M.C.L.A. § 440.1203(4) expressly provides that additional consideration is not nominal when the option price is the fair market value determined at the time the option is exercised. Thus, the Court concludes that the Lease agreement is not a security agreement per se under the two-part "bright line" test.

Even though the Court cannot conclude the Lease Agreement is a security agreement per se, upon further examination of the terms of the Lease Agreement, the Court concludes that the economic effect of the Lease Agreement under M.C.L.A. § 440.1203 supports that it is in fact a true lease. The lease was for a term of 4 years with 208 weekly payments in the amount of $130.06 per week, for a total of $28,002.48. The economic life of the Vehicle undoubtedly exceeds the term of the Lease Agreement, due to the fact that this is a newer vehicle and upon

consideration of the residual value of the Vehicle of $8,243.40 at the end of the lease. While Debtor does have the option to purchase the Vehicle at the end of the lease, such may only be done by payment of the residual value, plus a fee of $375 in addition to applicable fees and taxes. There is no obligation of Debtor or an option to renew the lease for the remaining economic life of the Vehicle.

<u>Conclusion</u>

The Court concludes that the Lease Agreement between Debtor and Brite Financial is a true lease under applicable Michigan and related law. Confirmation is currently adjourned to June 21, 2016, and the parties should take whatever action is appropriate incorporating this conclusion.

**Not for Publication**

**Signed on June 02, 2016**

```
                              /s/ Daniel S. Opperman
                        Daniel S. Opperman
                        United States Bankruptcy Judge
```

7

16-30360-dof    Doc 47    Filed 06/02/16    Entered 06/02/16 15:00:14    Page 7 of 7